HUB MAIL ADVERTISING SERVICE, INC. *vs.* INTER CITY
SALES, INC.

Suffolk.    October 7, 1959. — December 7, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, &
WHITTEMORE, JJ.

*Corporation,* Foreign corporation.    *Jurisdiction,* Foreign corporation.
*Evidence,* Relevancy and materiality.

Evidence warranted a finding that a foreign corporation, which was in-
corporated primarily to hold securities in the interest of its sole stock-
holder, a resident of Massachusetts, and carried on its activities in that
regard in other States, but which later engaged in the business of
financing charitable mailings and in connection therewith negotiated,
contracted, bought goods, and carried on other activities in Massa-
chusetts and was still doing so, although to a lesser extent, when its
secretary was served with process in an action against it here, was at
the time of such service "engaged in . . . business" here within G. L.
c. 223, § 38, so that the service was valid under § 38 and § 37 and there
was jurisdiction of it in the action.  [9–10]
On the issue whether a foreign corporation carrying on separable kinds of
business was "engaged in . . . business" in Massachusetts within G. L.
c. 223, § 38, evidence to show that the volume of its correspondence in
another State in connection with one kind of business was very large
compared with the volume of its correspondence in Massachusetts in
connection with another kind of business was irrelevant and was prop-
erly excluded.  [11]

CONTRACT.    Writ in the Superior Court dated December
15, 1954.

A plea to the jurisdiction was denied by *Macaulay,* J.    At
a subsequent trial of the action there were verdicts for the
plaintiff.    The defendant alleged an exception to the denial
of its plea.

*Charles F. Choate,* for the defendant.

*John Kimball, Jr.,* (*Earle C. Cooley* with him,) for the
plaintiff.

WHITTEMORE, J.    In this action of contract for work and
materials the defendant, a Delaware corporation, excepted

to the denial of its plea to the jurisdiction which set up in substance that the statutory and constitutional requirements for valid service on a foreign corporation had not been met.

Service, on December 17, 1954, was made upon the secretary of the corporation, as is expressly authorized by G. L. c. 223, § 38, by reference to § 37, if the corporation ". . . has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily . . . ."

On the evidence it was not unreasonable to conclude that the defendant was engaged in business in the Commonwealth at the time of service. Findings as next stated could have been made taking the evidence most favorably for the plaintiff.

The defendant (Inter City) had been incorporated in 1952 primarily to hold securities in the interest of its sole stockholder, president and treasurer, Edward M. Beals of Wenham. There had not been many changes in investment and the corporation for a period had little activity other than the receipt of income. To avoid "doing business in Massachusetts for tax purposes" the corporate records, although in Massachusetts from time to time for the convenience of the secretary, a Boston attorney, and of the president, had their permanent location in Delaware. The securities and bank accounts were in New York, corporate meetings were usually held in New York or Delaware, and such of Beals's attention as the business required was usually given in New York where Beals went frequently and where he maintained a mailing address. This for a time was the New York office of a business firm in which he had "special money" and after 1955 the apartment building where his daughter resided. Beals and his wife, with the secretary of the corporation, were the directors. Beals had desk space in the Boston office of the same business firm and received and wrote letters there, but prior to the spring of 1953 few, if any, concerned Inter City.

· Beginning in 1953, Beals for tax reasons put Inter City into the more active business of financing charitable mailings. Although he sought at first to avoid having aspects of this business done in Massachusetts, much of it was done here, and by Beals or with his acquiescence. The local business began in Beals's talks in March, 1953, with Herbert D. Berkson of Boston. These resulted in Beals accepting Berkson's proposal that Inter City finance mailings for a New York charity. A corporation, Elby Associates (Elby), was formed by Berkson at Beals's direction which contracted with the charity, and Inter City arranged with Elby to act as its purchasing agent. Inter City through Berkson contracted with the plaintiff and others to prepare in Boston, in three lots of 100,000 each, the identification cards, appeal letters, coin cards and return envelopes which were prepared for mailing in Boston and trucked to New York to be mailed there to take advantage of the charity's postal permit. In the conduct of this business, Inter City, in 1953 and 1954, in Massachusetts, engaged an employee (Berkson with title of sales manager), negotiated, contracted, bought goods, made payments of up to $23,000 by check on a bank account in a New York bank, corresponded, pursued and defended its interests, and dealt with its creditors. That is enough to satisfy the statute. *Trojan Engr. Corp.* v. *Green Mt. Power Corp.* 293 Mass. 377. *Wyshak* v. *Anaconda Copper Mining Co.* 328 Mass. 219. See *Jet Mfg. Co. Inc.* v. *Sanford Ink Co.* 330 Mass. 173; *McGee* v. *International Life Ins. Co.* 355 U. S. 220. Compare *Remington Arms Co. Inc.* v. *Lechmere Tire & Sales Co.* 339 Mass. 131, 137–138.

The last mailing under the contract with Elby was sometime around December, 1953, and Berkson's connection with Inter City ended in February or March, 1954. There was much less activity in Massachusetts thereafter. But the judge could have found that Inter City in December, 1954, when service was made, was still carrying on in Massachusetts the business of financing charitable mailings. *Trojan Engr. Corp.* v. *Green Mt. Power Corp.* 293 Mass. 377. See *Conroy* v. *Fall River Herald News Pub. Co.* 306 Mass.

488, 493.   Compare *Turner* v. *United Mineral Lands Corp.* 308 Mass. 531, 533, 534, 536–537.   Berkson had not been paid and he discussed this with Beals from time to time. Elby was sued by "Mr. Beals, Inter City" sometime in April, May or June, 1954, and Inter City recovered judgment.   When Inter City showed a loss on the 1953 mailings Beals tried to find out what had been going on and from March to June, 1954, in Boston, he "wrote everybody whose name appeared on the cancelled checks."   This resulted in a correspondence, which it could be reasonably inferred continued for a substantial time after June, 1954.   Beals carried on correspondence with the plaintiff "in trying to settle this dispute."   In the fall of 1954 and winter of 1955 Inter City was engaged in another "charitable appeals venture," the preliminary discussions for which were held in Boston, although the final arrangements were made in New York. Letters in respect of this business were sent from and received in Boston.

The distinction is plain between these facts and those in the *Turner* case where there was vestigial post-removal activity in the Commonwealth by officers who lived here and the master found on subsidiary and other facts that the corporation was not doing business in the Commonwealth. The judge here on adequate evidence has found otherwise.

We need not consider whether the facts show a case for disregard of the corporate fiction.

There was no error in the exclusion of the evidence to show that the volume of correspondence for the other aspects of Inter City's business, all carried on from New York, was very large compared to the correspondence in Boston. The correspondence in Boston was at least most of whatever arose in the course of a separable aspect of the business. The relative size of that aspect of Inter City's activity was irrelevant.

*Exceptions overruled.*