Morris GARFINKLE

v.

ARIZONA LAND CORPORATION.

Paul MANN

v.

ARIZONA LAND CORPORATION.

Civ. A. Nos. 66–221–G, 66–222–G.

United States District Court
D. Massachusetts.

Oct. 31, 1966.

Paul Garfinkle, Cambridge, Mass., for plaintiffs.

Jerome P. Facher, Boston, Mass., for defendant.

## MEMORANDUM

GARRITY, District Judge.

These are companion cases in which the plaintiffs, real estate brokers residing in Massachusetts, seek to recover on alleged written contracts for employment with the defendant corporation whose real estate in Arizona they were to sell to purchasers in Massachusetts and elsewhere. The suits were commenced in the municipal court for the City of Boston by service of process on the state secretary pursuant to Mass.G.L. c. 181 § 3A, and removed to this court. The defendant filed motions to dismiss on the grounds of lack of jurisdiction over the person of the defendant and insufficiency of service of process, alleging that the defendant is an Arizona corporation which does no business in Massachusetts. The defendant's motions in both cases are supported by substantially identical affidavits. The plaintiffs filed substantially identical counter-affidavits in opposition.

Plaintiff Garfinkle's declaration, filed in the state court, states that on October 1, 1965 he was engaged by the defendant to organize a sales force for the sale of its Arizona land to purchasers in Rhode Island and to sell real estate lots to purchasers both in Rhode Island and in Massachusetts. He was to be paid at the rate of $300 per week, plus a commission on sales in Rhode Island. The contract was for a period of three years. The contract, or a copy thereof, was not attached to the declaration. The declaration makes no reference to the place where the contract was negotiated and executed. The declaration alleges that the defendant refused to employ Garfinkle and that the defendant owes him $46,800, plus certain cash disbursements.

Plaintiff Mann's declaration states that on October 29, 1965 the defendant engaged him to head its sales force in Massachusetts and that he was to be compensated at the rate of $300 per week for a period of two years. It asserts that the defendant refused to employ him and is indebted to him for the sum of $30,600. This declaration is also silent regarding the precise language and place of formation of the contract.

It is apparent from the declarations that plaintiff Garfinkle received no compensation from the defendant inasmuch as he seeks to recover $46,800, which amounts to $300 per week for the three-year term of the contract. Plaintiff Mann seeks to recover the full amount of the contract less $600, which may mean that he was compensated for two weeks' work. Neither declaration indicates that the plaintiffs brought about any sales in Massachusetts of lots of Arizona real estate owned by the defendant.

The defendant's affidavits state that it has its principal offices in Phoenix, Arizona, and is engaged in the business of real estate development and sales of Arizona land. They allege that it does not maintain any office or place of business in Massachusetts, nor keep here any books of account or other records. It does not own or rent any property in Massachusetts nor have a telephone listing or bank account. It has not appointed any person in the Commonwealth of Massachusetts as its agent for service of process. All financial transactions and all sale transactions of the defendant are handled from its principal office at Phoenix, Arizona. Final approval of such transactions is given in Phoenix and all contracts of every kind and nature are entered into in the State of Arizona.

The defendant's motions were heard for the first time last May. The plaintiffs offered no evidence and filed no affidavits in support of the court's jurisdiction. The court denied the defendant's motions without prejudice. At the second hearing the plaintiffs filed counter-affidavits of one Adelson, a Massachusetts resident. Neither party requested an opportunity to offer testimony.

In the counter-affidavits filed by the plaintiffs, Mr. Adelson states that since August 9, 1965 he has been the vice-president of the defendant's Eastern Seaboard Division and that the defendant has held him out to the world as its vice-president. He further states that he has "conducted business, established offices, made sales of land, used advertising facilities, telephones, and other communications media, and entered into contractural (*sic*) commitments in the Commonwealth of Massachusetts for the benefit and in the name of the Arizona Land Corporation."

Although the plaintiffs undertook to serve process upon the defendant corporation before the case was removed to this Court and Massachusetts law determines the validity of service, the controlling principles are stated not only in opinions of the Supreme Judicial Court of Massachusetts but also in Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., 1 Cir., 1962, 310 F.2d 20, 24, and other federal cases applying Rule 4 (d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in which federal courts sit as if they were state courts. The relevant statute in this case, G.L. c. 181 § 3A,[1] has been construed many times by the federal courts for this District. The leading Massachusetts cases concerning service of process on foreign corporations are Jet Mfg. Co., Inc. v. Sanford Ink Company, 1953, 330 Mass. 173, 112 N.E.2d 252, and Wyshak v. Anaconda Copper Mining Co., 1952, 328 Mass. 219, 103 N.E.2d 230. They liberalized the Massachusetts rule, broadening the scope of the phrase "usual place of business" in view of permissive decisions of the Supreme Court of the United States, International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, and held that mere solicitation of business if part of "a sustaining endeavor with a significant degree of permanency and continuity", Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., supra, 310 F. 2d at p. 24, constitutes having a usual place of business in Massachusetts. Those cases, however, did not involve G.L. c. 181 § 3A but rather other sections of the Massachusetts statutes governing process, viz., G.L. c. 223 § 38 in Jet and G.L. c. 246 § 1 in *Wyshak*, and the question has arisen whether G.L. c. 181 § 3A should be interpreted in the light of those

1. G.L. c. 181 § 3A: "Any such corporation which does business in this commonwealth without complying with the provisions of section three * * * shall * * * be deemed and held, in relation to any cause of action or proceeding arising out of such business, to have appointed the secretary and his successor in office to be its true and lawful attorney, and any process in any such action or proceeding against it served upon the secretary or his successor in office shall be of the same legal force and validity as if served on such corporation."

cases. It is an involved question, see Radio Shack Corp. v. Lafayette Radio Electronics Corp., D.C.Mass., 1960, 182 F.Supp. 717, and Lowd v. California Fund Management Company, D.C.Mass., 1964, 235 F.Supp. 486, which will be resolved ultimately by the Supreme Judicial Court of Massachusetts. Meanwhile this court faces the question at the threshold of construing G.L. c. 181 § 3A.

In my opinion, the criteria stated in the *Jet* and *Wyshak* cases are here applicable. They were applied in Waltham Precision Instrument Co. v. McDonnell Aircraft Corp., supra, in which service was made under G.L. c. 181 § 3A. The questions raised by service under G.L. c. 223 § 38 and G.L. c. 181 § 3A are essentially the same. Venus Wheat Wafers, Inc. v. Venus Foods, Inc., D.C.Mass.1959, 174 F. Supp. 633, 634. The Supreme Judicial Court of Massachusetts would in my opinion hold that the rule should be the same under G.L. c. 181 § 3A as under the other two statutes. Cf. Wyshak v. Anaconda Copper Mining Co., supra, 328 Mass. at p. 223, 103 N.E.2d 230, where the Massachusetts court gave no effect to greater differences in language between G.L. c. 223 § 38 [2] and G.L. c. 246 § 1 [3] than exist between G.L. c. 181 § 3A and either of the other two statutes. Remington Arms Co., Inc. v. Lechmere Tire & Sales Co., 1959, 339 Mass. 131, 136, 158 N.E.2d 134, which may indicate to the contrary, dealt not with service of process on a corporate defendant but rather with barring a plaintiff foreign corporation from the courts of Massachusetts and imposition of other severe penalties under G.L. c. 181 § 5.

■ Thus in this case the court has measured the facts against the standards set in the *Jet* and *Wyshak* cases, enlarging a Massachusetts court's jurisdiction over the person of a foreign corporate defendant. Nevertheless the court finds that the plaintiffs have failed to sustain their burden, see Aro Manufacturing Co. v. Automobile Body Research Corp., 1 Cir., 1965, 352 F.2d 400, 403, Kesler v. Schetky Equipment Corp., Cal.D.C., 1961, 200 F.Supp. 678, of proving that the defendant corporation was doing business in Massachusetts. The counter-affidavit of Adelson is deficient and ambiguous. It does not state when or over what period of time he performed the various acts described. It refers to Adelson both as vice-president of a division of the defendant company and as the defendant's vice-president. It states that he has never been notified that he is no longer a vice-president of the defendant, a negation which connotes a less than intimate relationship between him and the home office. It does not make clear whether the various acts described all occurred in Massachusetts or whether the phrase "in the Commonwealth of Massachusetts" applies only to the contractual commitments entered into.

■ Even if the plaintiffs had established the presence of the defendant corporation within the Commonwealth of Massachusetts, their resort to G.L. c. 181 § 3A, would fail because of the restricted applicability of that section. It applies only "in relation to any cause of action or proceeding arising out of such business." This means business arising in the state of Massachusetts. Remington Arms Co., Inc. v. Lechmere Tire & Sales Co., supra, 339 Mass. at p. 136, 158 N.E. 2d 134; Trojan Engr. Corp. v. Green Mountain Power Corp., 1936, 293 Mass. 377, 382, 200 N.E. 117. So far as ap-

---

**2.** G.L. c. 223 § 38: "In an action against a foreign corporation * * * which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily, service may be made * * *"

**3.** G.L. c. 246 § 1: "All personal actions, except * * * may be commenced by trustee process, and any person may be summoned as trustee of the defendant therein * * *. An individual who is not an inhabitant of the commonwealth, or a foreign corporation or association, shall not be so summoned unless he or it has a usual place of business in the commonwealth. * * *"

pears, the pertinent employment contracts may have been negotiated and executed in Arizona.

Plaintiffs have not sought to serve the defendant under G.L. c. 223 §§ 37, 38, and there is no basis for finding that service could be effected under that chapter. See William I. Horlick Co. v. Bogue Electric Mfg. Co., D.C.Mass.1956, 140 F.Supp. 514. Accordingly, the defendant's motions are granted and the complaints are dismissed.